Joshua M. Lurie, Esq. (0788)
Lurie|Strupinsky, LLP
15 Warren Street, Suite 36
Hackensack, New Jersey 07601
(201) 518-9999 (main)
(347) 772-3074 (facsimile)
Attorney for Plaintiff

---

| | |
|---|---|
| RETROSPECTIVE GOODS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>ANDRES BOLE; LEYCO, INC.; JOHN DOES 1-50 (Fictitious parties named to represent owners, operators, managers, employees, board members or others with controlling interest in Leyco, Inc., if any); and BUSINESS ENTITIES A-J (Fictitious parties named to represent business entities that are the owners, operators, managers, employees, board members or others with controlling interest in Leyco, Inc., if any),<br><br>          Defendants. | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK<br><br>Civil Case No.<br><br>COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL |

Plaintiff, RETROSPECTIVE GOODS, LLC ("Plaintiff"), by way of Complaint against the Defendants, says:

**PARTIES**

1.      Plaintiff Retrospective Goods, LLC ("Plaintiff") is a Colorado Limited Liability Company with its principal offices located in Brooklyn, New York.

2.      Defendant Andres Bole ("Bole") is a natural person, upon information and belief a resident of the State of California, and is servable at 699 14th Street, Unit 424, San Diego, California, 92101.

3.      Defendant Leyco, Inc. ("Leyco") is, upon information and belief, a non-existent

corporation and fictitiously identified on items which originate from Bole to divert attention from Bole directly for the wrongful conduct identified herein.  Notwithstanding, is named herein in such capacity as the business which sells the product which is the subject of this matter.

4.      The John Doe and Business Entity defendants are fictitious parties named herein because their identities are not currently known, and are used to represent individuals involved in the conduct set forth herein as well as, potentially, the owners, operators, employees, directors, managers and individuals or business entities with controlling interests in Defendants, if any such exist and whom or which, after discovery, may be determined to be partially or otherwise responsible for the harm which the Plaintiff suffered and therefore an amended Complaint would be necessary to name them.

## NATURE OF THE ACTION

5.      This is a case of a business trying to sell a knock-off item at a lower price than the principal and, in their process of trade dress violations, were so bold as to use the company to which they were knocking-off's intellectual property, including, but not limited to, copyrighted documents.

6.      More specifically, Plaintiff is the creator of certain "executive toys."  Defendant, seeking a way to make money, copied every element of the Plaintiff's product with the clear intent to steal Plaintiff's intellectual property.  Indeed, the directions for Defendants' product egregiously uses what appear to be "photoshopped" copies of Plaintiff's copyrighted documentation.

7.      As a result of the egregious conduct of the Defendants, Plaintiff brings this action for violations of multiple federal laws, including copyright infringement pursuant to 17 U.S.C. § 504, trademark counterfeiting, trademark dilution along with trade dress infringement in violation of the Lanham Act along with various claims under the common law.

8.      The common law claims arise under, *inter alia*, allegations of common law trademark protections, copyrights, and other offenses.

9.      Many of the common law claims arise under the permissive joinder provisions of Fed.R.Civ.P. 20, as the issues therein are intertwined with the statutory and federal claims, and a full adjudication of all issue against all parties would simplify the claims, eliminate the risks of contradictory rulings, and would be in the best interest of justice and judicial efficiency.

### JURISDICTION AND VENUE

10.     This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 as violations of the Copyright Act and the Lanham Act including trademark dilution and trade dress violations.

11.     The Court has Supplemental Jurisdiction, pursuant to 28 U.S.C. § 1367 for the New York statutory claims.

12.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims herein are within this district as well as this district is Plaintiff's principal address.

### FACTS

13.     Plaintiff is the creator of various toys marketed as "executive toys" – in other words, items made for adults and, largely, to "fidget" with while performing other tasks.

14.     Among the items Plaintiff created, is an item called "SPEKS" which consists of 512 Rare Earth magnetic balls, shaped in a cube, that you can manipulate into various shapes. The product comes in an elongated squared plastic tube with the magnets in a cubical shape in a plastic wrap. The package looks as follows:



15.     The packaging is set up to appear as a rectangular box made of clear plastic. Contained therein is a cardboard box which contains the majority of the items as discussed below. The box's top has a metal building base (as discussed below) which separates the cardboard from a fully transparent part.  Contained in the transparent part is a diagonally placed piece of plastic which, in a "diamond" shape compared to the rest of the box, the 512 Rare Earth magnets set up in a cubical shape of about 1-inch cube.  On the top of the box is a "warning" label which is distinct and states "/!\ WARNING /!\  KEEP AWAY FROM ALL CHILDREN!  Do not put in your mouth or nose.  Swallowed magnets can stick across intestines causing serious injury or death.  Seek immediate medical attention if magnets are swallowed or inhaled."

16.     The product's total image and overall appearance is defined by its composition, design, shape and has been set up in a manner that identifies its source.  In other words, the design of the packaging, and how the individual pieces of the product, are not decorative or aesthetic – rather, they show the definition of the product so that one could distinguish SPEKS from other products on the shelves through its distinctive packaging.  As such, the design is fanciful and inherently distinctive.

17.     Upon opening the case, the consumer is presented with, in addition to the rare earth metals which were visible, a cubical plastic case for storing the magnets, the metal building base, a "splitter card" and a manual giving some instructions and potential shapes.

18.     Each piece has a distinctive letter "S" with a period at the end.

19.     A photograph showing the contents of the package is attached hereto as **Exhibit A**.

20.     The product, SPEKS, launched in January of 2017 is currently sold in thousands of retail stores around the world and through Plaintiff's own website and Amazon.

21.     The Plaintiff began selling SPEKS on Amazon in approximately mid-2017.

22.     While different versions of SPEKS are different prices, the general price is between $25.00 and $28.00

23.     In addition to the development of the product, Plaintiff takes its own photography, does all design in-house, including packaging, and writes its own copy which includes the images and instructions which come inside of the SPEKS package.

24.     As with any successful product, shortly thereafter, knockoffs began showing up.

### The Magnetica Knockoff, Trade Dress and Copyright Violations

25.     In late summer to early fall of 2018, Plaintiff realized a knockoff product called Magnetica appearing on Amazon.  Plaintiff realized that everything of this product appeared to be very similar to the SPEKS product – the only exception that, as with many knockoffs, the price was lower by five dollars ($5.00) selling for $22.00.

26.     The principal of Plaintiff chose to purchase one of the Magnetica products in January of 2019.

27.     Upon receipt of the knockoff Magnetica product, Plaintiff was aghast with what he saw.

28.     The box was an identical box of the SPEKS product, only with modified graphics and colors.  It identified that it was made by Defendant Leyco, Inc.

29.     As discussed above, neither Plaintiff nor its agents can find any evidence of there being an entity called Leyco, Inc.

30.     The design of the Magnetica box was identical to that of SPEKS with the exception of the color (dark reds and dark blues versus the various of SPEKS) – but it was evident that the purpose of the packaging was to exactly mimic that of SPEKS such that one could not distinguish which was the genuine, original product and which was the knock-off.

31.     In addition to the trade dress violation, and the knock-off of the rare-earth magnets, this Magentica product, internally was along a carbon copy of the Speks product – from design, items contained within the box, and the images on the box.

32.     The Magnetica product also included a splitter card which was a copy of Plaintiff's, a metal building base like Plaintiff's but instead of having a "S." on it, it had a "M.", and a plastic carrying case copied from Plaintiff but in a different color and showing the "M." instead of the "S."

33.     The magnets themselves were identical, packed in identical packaging and placed in the copied packaging in the exact same manner as SPEKS.

34.     A photograph of the Magnetica packaging and all contents therein is attached hereto as **Exhibit B**.

35.     Even more egregious, the box itself contained images from Plaintiff's box and manual, had almost identical language (or identical language) and its manual contained images directly taken from Plaintiff's manual.

36.     It was here that Plaintiff realized that this was not just a knockoff, but a theft.

37.     While Plaintiff's instructions are long and detailed, Defendants' are not.  Rather, it contained few directions and, amazingly, were Plaintiffs – directly taken from their manual!  The images were not just similar to Plaintiff's, they were Plaintiff's designs.

38.     Shocked, Plaintiff's principal researched Magnetica and found the owner on LinkedIn.  Amazingly, that same person had searched and found Plaintiff's principal on the same platform only a month before and, likely, several times prior.

39.     Plaintiff thereafter retained counsel and registered a copyright for the instructions in January which includes all images which were copied by the Defendants herein.

40.     The instructions were identified as "Speks. Get Goin' Guide" and given copyright registration number TX0008674326/2019-02-08.

41.     A copy of the copyrighted instructions is attached hereto as **Exhibit C**.

42.     Thus, Defendants' packaging is a clear trade dress violation, the contents are similarly violative of Plaintiff's trade dress, and Defendants have violated Plaintiff's copyright. As it is clear that Defendants were researching Plaintiff, and taking action to copy Plaintiff's product, SPEKS, the use of the actual drawings taken from Plaintiff's "Speks. Get Goin' Guide" evidence willful conduct.

**FIRST CAUSE OF ACTION**
**Trade Dress Infringement and False Designation of Origin in Violation of Section**
**43(a) of the Lanham Act (15 U.S.C. § 1125(a))**

43.     Plaintiff repeats and realleges the statements as set forth in the preceding paragraphs as if set forth in full herein.

44.     Section 43(a) of the Lanham Act sets forth, in pertinent part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false description of original, false or misleading description of fact, or false or misleading representation of cat which … (1)(a) is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another personal . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

45.     By the mimicking of the entire packaging of the SPEKS product through the Magnetica product, Defendants have used a "false designation of origin" that is likely to cause confusion, mistake or deception as to the affiliation or connection of these defendants to Plaintiff and as to the origin, association or approval of these Defendants' products by Plaintiff, in violation of Section 43(a) of the Lanham Act.

46.     Defendants acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent that these Defendants product is that of Plaintiff in violation of Section 43(a) of the Lanham Act.

47.     Defendants' conduct and willful acts will continue unless and until enjoined by the Court.

48.     Defendants' egregious conduct in selling infringing products is willful and intentional.

49.     Defendants acts have cause, and will continue to cause, irreparable injury to Plaintiff, and Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined but no less than $1,000,000.00.

## SECOND CAUSE OF ACTION
### Copyright Infringment in Violation of the Copyright Act of 1976
### (17 U.S.C. §§ 501, *et seq.*)

50.     Plaintiff repeats and realleges the statements as set forth in the preceding paragraphs as if set forth in full herein.

51.     As set forth above, Plaintiff owns a valid copyright over the document known as "Speks. Get Goin' Guide" and the art and drawings contained therein which are subject to copyright protection, are original, copyrightable, and was not transferred, licensed, or otherwise permission granted to Defendants.

52.     Since at least January 1, 2019, and continuing to date, Defendants utilized and/or copied these copyrighted works, and modified them without permission, notwithstanding that

Plaintiff has the sole and exclusive right to either modify or grant the right to do so, by placing sections thereof within their own manual for their knockoff product, and otherwise use these modified/altered versions of Plaintiff's copyrighted works for their own financial gain and advertisement.

53.     The utilization of Plaintiff's copyrighted materials by Defendants has infringed on Plaintiff's copyrights and, as a result, has harmed and damaged Plaintiff.

54.     Further, the methods to which the copyrights were infringed evidence willful and intentional conduct.

55.     Therefore, as a direct and proximate result of Defendants' conduct as set forth herein, Plaintiff seeks damages against Defendants, jointly and severally, in the maximum amount permissible under 17 U.S.C. § 504, for $300,000.00 plus attorneys' fees and costs pursuant to 17 U.S.C. § 505 along with an order for an equitable accounting for a determination of income derived from such misappropriation and an award of such actual damages and profits as a result of the infringement.

**THIRD CAUSE OF ACTION**
**Deceptive Acts and Practices in violation of the New York General Business Law**
**(N.Y. Gen. Bus. Law. §§ 349 and 350)**

56.     Plaintiff repeats and realleges the statements as set forth in the preceding paragraphs as if set forth in full herein.

57.     New York General Business Law, Section 349, sets forth, in pertinent part that, "[d]eceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state is hereby declared unlawful."

58.     Similarly, Section 350 states, in pertinent part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

59.     Through the advertisement, distribution, offer to sell, and sale of unauthorized products packaged and sold as a colorable imitation of Plaintiff's product which is district and famous, the Defendants have engaged in a consumer-oriented conduct that has affected the public interest of New York and resulted in injuries to consumers in New York, including, but not limited to, those who are interested in purchasing "executive toys."

60.     These defendants' deceptive acts or practices, as described herein, are materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public, *to wit*, those who are interested in the purchase of executive toys, to which these defendants have directed their marketing activities and Plaintiff has been injured as a result.

61.     By the acts described herein, these defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing products in violation of Sections 349 and 350 of the New York General Business Law.

62.     The Defendants acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is, thus, damaged in amount to be determined at trial.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor, and against the Defendants, jointly and severally as applicable, as follows:

A.  Enjoin, preliminarily and permanently, Defendants from:

a.  Using any reproduction, counterfeit, copy or colorable imitation of the SPEKS trademarks (as defined herein) for and in connection with any not authorized by Plaintiff;

b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of the SPEKS trademark;

c.  Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendant's unauthorized product as

being those of Plaintiff, or sponsored by or associated with Plaintiff, and from offering such goods into commerce;

d.  Further infringing the Plaintiff's trademark by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any services not authorized by Plaintiff that bear any simulation, reproduction, counterfeit, copy or colorable imitation of the SPEKS trademark;

e.  Using any simulation, reproduction, counterfeit, copy or colorable imitation of the SPEKS trademark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized services in such fashion as to relate or connect, or tend to relate or connect, such services in any way to Plaintiff, or to any products sold, manufactured, sponsored or approved by, or connected with Plaintiff;

f.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products provided, distributed, or sold by the Defendants are in any manner associated or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff; and

g.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

B.  Awarding actual damages, royalties, and an award of all profits that Defendants derived from Defendants' trade dress infringement pursuant to 15 U.S.C. § 1117;

C.  Awarding counsel fees and costs of suit as provided by 15 U.S.C. § 1117 due to the egregious nature of Defendants' conduct;

D.  Awarding statutory damages, pursuant to 17 U.S.C. § 504 for willful infringement in the amount of $300,000.00;

E.  Awarding an equitable accounting of Defendants' records;

F.  Awarding actual damages and profits from Defendants' infringement pursuant to 17 U.S.C. § 504;

G.  Awarding damages for all amounts wrongfully obtained by Defendants from their use and infringement of Plaintiff's copyrights, including any income derived therefrom;

H.  Awarding counsel fees and costs of suit as provided by 17 U.S.C. § 505;

I.  Actual damages for the violations of N.Y. Gen. Bus. Law §§ 349 and 350.

J.  Compensatory damages;

K.  Award Punitive damages;

L.  Award counsel fees and costs of suit;

M.  Award prejudgment and post-judgment interest; and

N.  Any other such relief as the Court deems just and appropriate.

## <u>JURY TRIAL DEMAND</u>

Pursuant to <u>Fed.R.Civ.P.</u> 38(b), Plaintiffs hereby demand a jury trial on triable issues raised by this complaint.

Dated: May 9, 2019

                                           Respectfully submitted,

                                           /s/ Joshua M. Lurie
                                           Joshua M. Lurie, Esq. (JL0788)
                                           Lurie|Strupinsky, LLP
                                           15 Warren Street,
                                           Suite 36 Hackensack, New Jersey 07601
                                           Ph. 201-518-9999
                                           jmlurie@luriestrupinsky.com

E
X
H
I
B
I
T

A

# EXHIBIT A



E
X
H
I
B
I
T

B

# EXHIBIT B



E
X
H
I
B
I
T

C

# EXHIBIT C



**STEP 2:**

Folding your sheet eight rows at a time. Make sure that your Speks are lined up, otherwise this will not work.

**STEP 3:**

Continue folding the sheet back and forth every eight rows (again, following the highlights we've made above).

14